IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BRIAN CONNELLY, JOSEF DAVIS, HANS EUBANKS, EVGENY FEDOROV, KIN MOY, MICHAEL PARKER, RICHARD REHAK, TRAVIS SIDES, SHENG SU, AND ZOLA THORNTON, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No._____ |
| VOLKSWAGEN GROUP OF AMERICA, INC. a/k/a AUDI OF AMERICA, INC., VOLKSWAGEN AKTIENGESELLSCHAFT, and AUDI AKTIENGESELLSCHAFT, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

---

# CLASS ACTION COMPLAINT

---

Steven T. Webster (VSB No. 31975)
swebster@websterbook.com
Aaron S. Book (VSB No. 43868)
abook@websterbook.com
Webster Book LLP
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (phone and fax)

Kevin R. Dean (Application for admission *Pro Hac Vice* to be submitted upon filing)
John David O'Neill (Application for admission *Pro Hac Vice* to be submitted upon filing)
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone: 843.216.9000
Facsimile:  843.216.9440
E-mail: kdean@motleyrice.com
E-mail: jdoneill@motleyrice.com

*Attorneys for the Plaintiffs and for the*
*Proposed Nationwide Class and State Classes*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. I-2

I.     INTRODUCTION ..................................................................................... 2

II.    PARTIES .................................................................................................. 9

    A.    Individual and Representative Plaintiffs ........................................ 9

    B.    Defendants ................................................................................... 11

III.   AGENCY ............................................................................................... 14

IV.   SUBJECT MATTER JURISDICTION .................................................. 14

V.    PERSONAL JURISDICTION ............................................................... 14

    A.    VW America ................................................................................ 14

    B.    VW Germany ............................................................................... 14

    C.    Audi AG ...................................................................................... 15

VI.   VENUE .................................................................................................. 16

VII.  FACTUAL ALLEGATIONS ................................................................. 16

    A.    The Fourth-Generation EA837 Engine and 3.0L TSI Engine with Supercharger ............................................................................... 16

    B.    Timing Chain Systems ................................................................ 18

    C.    The Defective Timing Chain System ......................................... 21

    D.    Defendants' Knowledge of the Timing Chain System Defect ........................ 29

        1.    Technical Service Bulletins ............................................. 31

        2.    National Highway Traffic Safety Administration Complaints .......... 32

        3.    The Chain Tensioner Redesign ....................................... 33

VIII. Tolling of the Statute of Limitations ..................................................... 35

    A.    Discovery Rule Tolling ............................................................... 35

    B.    Fraudulent Concealment Tolling ................................................ 36

    C.    Estoppel ....................................................................................... 36

IX.   CLASS ACTION ALLEGATIONS ....................................................... 36

    D.    Numerosity and Ascertainability ................................................ 43

    E.    Typicality .................................................................................... 43

    F.    Predominance of Common Questions .......................................... 44

    G.    Superiority ................................................................................... 44

CLAIMS FOR RELIEF ................................................................................... 46

    COUNT I: IMPLIED AND WRITTEN WARRANTY Magnuson - Moss Warranty

Act (15 U.S.C. §§ 2301, *et seq.*) ................................................................ 46

COMMON LAW CLAIMS ............................................................................ 47

    COUNT II ................................................................................................... 47

    COUNT III .................................................................................................. 49

STATE LAW CLAIMS .................................................................................... 50

MICHIGAN ...................................................................................................... 50

    COUNT IV .................................................................................................. 50

NEW JERSEY .................................................................................................. 52

    COUNT V ................................................................................................... 52

    COUNT VI .................................................................................................. 55

NEW YORK ..................................................................................................... 56

    COUNT VII ................................................................................................. 56

NORTH CAROLINA ....................................................................................... 59

    COUNT VIII ............................................................................................... 59

OHIO 61

    COUNT IX .................................................................................................. 61

VIRGINIA ........................................................................................................ 64

    COUNT X ................................................................................................... 64

ALL OTHER STATES AND THE DISTRICT OF COLUMBIA ....................... 66

    COUNT XI .................................................................................................. 66

## CLASS ACTION COMPLAINT

Plaintiffs Brian Connelly, Josef Davis, Hans Eubanks, Evgeny Fedorov, Kin Moy, Michael Parker, Richard Rehak, Travis Sides, Sheng Su, and Zola Thornton (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" as defined hereinafter), bring this action against Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VW America") (together, "VW"), and Audi Aktiengesellschaft ("Audi AG" or "Audi") (collectively, "Defendants" or "Volkswagen") and allege, based upon information and belief, the investigation of counsel, and personal knowledge of the individual Plaintiffs as to the allegations pertaining to themselves, the following:

1.      The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.      INTRODUCTION

2.      Plaintiffs Brian Connelly, Josef Davis, Hans Eubanks, Evgeny Fedorov, Kin Moy, Michael Parker, Richard Rehak, Travis Sides, Sheng Su, and Zola Thornton bring this class action individually and on behalf of all persons in the United States who purchased, own, owned, lease, or leased a 2011 through 2015 model year 3.0L TFSI VW or Audi vehicle containing the defective Timing Chain System as defined below (the "Class Vehicles"[2]), for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

3.      Defendants wrongfully and intentionally concealed a defect in the timing chain system (the "Timing Chain System") of the Class Vehicles, which can fail at any time, placing consumers at risk of injury and forcing Plaintiffs and members of the Classes (defined below) to incur out-of-pocket costs to repair or replace the damaged engine parts or their entire engine. The Timing Chain System contains a device known as a "hydraulic chain tensioner" that is designed to keep the camshaft and crankshaft sprockets properly engaged and synchronized by taking up chain slack and applying a certain level of force on the tensioning

---

[1] Counsel's investigation includes an analysis of publicly available information, including Defendant's' Technical Service Bulletins, National Highway Traffic Safety Administration documents and consumer complaints, as well as expert analysis of the defective and redesigned timing chain tensioners, field investigations, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

[2] The Class Vehicles include but are not limited to the following models: 2015 Audi A5, 2011-2015 Audi A6, 2012-2015 Audi A7, 2013-2015 Audi A8, 2013-2015 Audi Q5, 2011-2015 Audi Q7, 2011-2015 Audi S4, 2011-2015 Audi S5, 2014-2015 Audi SQ5, and 2011-2015 Volkswagen Touareg. Plaintiffs reserve the right to supplement or amend the Class Vehicle description.

rail. As explained in detail below, the Timing Chain System fails before the end of the useful life of the engine as the result of a defect in design, materials, manufacturing, and/or workmanship (the "Timing Chain System Defect"). At a minimum, repairs will exceed $1,200.00. In some cases, repairs can cost thousands of dollars.

4.        The Timing Chain System is comprised, *inter alia*, of the camshaft sprockets, camshaft chain, camshaft chain hydraulic tensioner, timing gear-tensioning rail, and timing gear chain rails. The system is depicted in the figure at paragraph 74, *infra*. Class engines use a hydraulic timing chain tensioner actuated by engine oil pressure to regulate tension on the timing chain tensioning rail that applies tension to the timing chain. This tension keeps the timing chain from jumping the teeth on the sprockets attached to the camshafts and crankshaft and also maintains synchronization between rotating engine components, including the cylinder valves and pistons. Without proper timing chain tension and synchronization, the engine will run very poorly, if at all. Without proper timing chain tension, the timing chain may jump teeth on the sprockets attached to the camshafts and crankshaft; this is referred to as chain skip and results in mis-synchronization of the cylinder valves and pistons. If sufficient chain skip and mis-synchronization occur, the cylinder valves and pistons will collide, resulting in severe internal damage to the engine.

5.        The Timing Chain System defect also presents a significant safety risk for Plaintiffs and members of the Classes. When the Timing Chain System suddenly and unexpectedly fails, Class Vehicles lose engine power, which causes a loss of power to systems such as power steering and breaking. These system failures result in an inability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes. Thus, drivers and occupants of the Class Vehicles are at risk for collisions and other accidents as a

3

result of Defendants' failure to disclose the existence of the Timing Chain System defect and corresponding safety risk.

6.        Despite Defendants' knowledge of the Timing Chain System Defect, Defendants have never disclosed to Plaintiffs and members of the Classes that the defect exists or that drivers and occupants of the Class Vehicles are at risk. Notwithstanding the fact that the Timing Chain System should operate normally in vehicles for at least 130,000 driven miles, on information and belief, Defendants have refused to repair or replace the Timing Chain System outside of the time periods covered by the manufacturer's warranties. Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Timing Chain System to Plaintiffs and members of the Classes by fraudulently concealing the existence of the latent defect, which Defendants know will typically fail and cause damage after the expiration of the warranties. Repairs can range in cost from approximately $1,200.00 (to replace the tensioner and timing chain) up to approximately $10,000.00 or more (to replace the entire engine).

7.        The Timing Chain System defect initially presents during engine startup with the symptom of excessive rattling noises. These noises typically last from 1 to 3 seconds but may last much longer.

8.        A Technical Service Bulletin ("TSB") is a communication from a manufacturer or distributor of automobiles to its dealer network that identifies and describes a recurring problem with a particular model or models and that also advises the dealers' service personnel how to address the problem described. According to TSB-15-16-28 (the "TSB"), issued by Defendants to its dealer network, these noises are caused by one or both of the defective upper chain tensioners on the Class Vehicles. While the TSB indicates that these

noises do not lead to engine damage, the noises are actually a symptom of the Timing Chain System defect that can cause catastrophic engine damage. The TSB therefore directs service technicians, "If the rattling noise comes from the area of the timing chains (back of the engine) for 1-3 seconds after the first start of the day, *replace both upper chain tensioners of bank 1 and bank 2 with the optimized chain tensioners*."  TSB-15-16-28 (emphasis added).

9.      The Class Vehicles are equipped with fourth-generation EA837 engines, which contain the defective Timing Chain System. Because of the defect, the fourth-generation EA837 engines are prone to premature failure before the end of the useful life of the engine and before the vehicle has been driven 130,000 miles.

10.     Defendants designed, manufactured, imported, distributed, marketed, and sold Class Vehicles with the defective Timing Chain System. The fourth-generation EA837 engine with the defective Timing Chain System is contained in at least the following VW and Audi Class Vehicles: 2015 Audi A5, 2011-2015 Audi A6, 2012-2015 Audi A7, 2013-2015 Audi A8, 2013-2015 Audi Q5, 2011-2015 Audi Q7, 2011-2015 Audi S4, 2011-2015 Audi S5, 2014-2015 Audi SQ5, and 2011-2015 Volkswagen Touareg.

11.     The Audi Class Vehicles are equipped with fourth-generation EA837 3.0L TFSI engines designated with engine codes CCAA, CCBA, CGXB, CGXC, CGXD, CJWB, CJWC, CJWE, CREC, CTUA, CTUB, CTUC, CTUD, CTWA, and CTWB. The Volkswagen Class Vehicles are equipped with 3.0L TSI engines with supercharger designated with engine code CGFA. The engines designated with these codes all use similar Timing Chain Systems.

12.     Based on Defendants' representations in the USA Warranty and Maintenance schedules for the Class Vehicles, the Timing Chain System is expected to last for the useful life of the engine or at least 130,000 miles without the need for maintenance, repair, or replacement.

For example, owners and lessees of Class Vehicles were provided owner's manuals and USA Warranty and Maintenance schedules that do not show any Timing Chain System inspection or maintenance within the first 130,000 miles.[3] Indeed, the Timing Chain System is omitted from the maintenance schedules. Additionally, the Audi Self Study Program for the 3.0L TFSI engine lists the maintenance interval for the timing drive/chain and timing drive tensioning system as "***Lifetime***."[4]

13.     Defendants provide warranty coverage for Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which covers "all internal [engine] parts."

14.     Under warranties provided to members of the Classes, Defendants promised to repair or replace defective Class Vehicle engine components arising out of defects in materials and/or workmanship, such as the Timing Chain System defect, at no cost to owners or lessees of the Class Vehicles. These warranties were provided in Class Vehicle window labels, Monroney stickers, owner's manuals and brochures, and advertised on Defendants' websites.

15.     Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Timing Chain System.

---

[3] *See* Exhibit A (summarizing maintenance schedule and not showing any scheduled Timing Chain System maintenance for Class Vehicles for 130,000 miles).

[4] *See* Exhibit B at 45.

16.     Because the latent Timing Chain System defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Timing Chain System under the terms of the warranties.

17.     Furthermore, given the latent nature of the Timing Chain System defect, Defendants knew or should have known that the majority of Timing Chain System failures would occur outside of the warranty periods and have thus wrongfully transferred the costs of repair or replacement to Plaintiffs and members of the Classes through Defendants' fraudulent concealment of the defect.

18.     The costs associated with repairing the Timing Chain System defect and/or resultant damage are significant and no reasonable consumer expects to incur such costs during the useful life of the engine given Defendants' representations in the USA Warranty and Maintenance schedules.

19.     Knowledge and information regarding the Timing Chain System defect was in the exclusive and superior possession of Defendants and their dealers and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.

20.     Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers, *inter alia*, Defendants knew or should have known of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Classes.

21.     Defendants misrepresented the standard, quality, or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Timing Chain System defect to increase profits and decrease costs by selling additional Class Vehicles

7

and by transferring the costs of repair or replacement of the Timing Chain System to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes. Defendants have acknowledged the Timing Chain System defect by releasing several Technical Service Bulletins describing the issue to their exclusive network of dealerships beginning in or around March 2015.

22.     Plaintiffs and members of the Classes assert claims against Defendants for fraudulent concealment, breach of express and implied warranties, violation of The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., unjust enrichment, and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of each of the states of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Vermont, Virginia, Washington, West Virginia, Wisconsin, and the District of Columbia.

23.     Defendants knowingly omitted, concealed, and suppressed material facts regarding the defective Timing Chain System and its corresponding safety risk, and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes. As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiffs and members of the Classes are entitled to damages, injunctive relief, and declaratory relief.

24.     As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair or replacement of the Timing Chain System, other engine parts, and/or the entire engine; (2)

costs for future repairs and/or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

## II. PARTIES

### A. Individual and Representative Plaintiffs

25.        Plaintiff and proposed class representative Brian Connelly is a resident and citizen of Hoboken, New Jersey. In January of 2017, Mr. Connelly purchased a used 2012 Audi Q7 from Market Auto Sales in Patterson, New Jersey. Mr. Connelly's 2012 Audi Q7 was purchased with 49,478 miles on the odometer. At the time of purchase, Mr. Connelly did not know about the latent Timing Chain System defect. Mr. Connelly would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

26.        Plaintiff and proposed class representative Josef Davis is a resident and citizen of Westerville, Ohio. In May of 2018, Mr. Davis purchased a used 2013 Audi Q7 at the Toy Barn in Dublin, Ohio. At the time of purchase, Mr. Davis did not know about the latent Timing Chain System defect. Mr. Davis would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

27.        Plaintiff and proposed class representative Hans Eubanks is a resident and citizen of Douglasville, Georgia. In July of 2014, Mr. Eubanks purchased a 2011 Audi Q5 at CarMax in Norcross, Georgia. In August of 2019, Mr. Eubanks was forced to have the latent Timing Chain System defect in his 2011 Audi Q5 repaired at a cost in excess of $3,000.00. At the time of purchase, Mr. Eubanks did not know about the latent Timing Chain System defect. Mr. Eubanks would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

28.        Plaintiff and proposed class representative Evgeny Fedorov is a resident and citizen of Somerville, Massachusetts. In December of 2018, Mr. Fedorov purchased a 2012 Audi

A6 from Herb Chambers in Massachusetts. At the time of purchase, Mr. Fedorov did not know about the latent Timing Chain System defect. Mr. Fedorov would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

29.      Plaintiff and proposed class representative Kin Moy is a resident and citizen of Warren, Michigan. In September of 2018, Mr. Moy purchased a 2011 Audi A6 Quattro Prestige from Plymouth Auto Sales in Plymouth, Michigan. At the time of purchase, Mr. Moy did not know about the latent Timing Chain System defect. After purchasing the vehicle, Mr. Moy experienced mechanical problems and had the vehicle towed to his mechanic for inspection. Upon inspection, it was determined that the latent Timing Chain System defect was present and the car was totaled. At the time of purchase, Mr. Moy did not know about the latent Timing Chain System defect. Mr. Moy would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

30.      Plaintiff and proposed class representative Michael Parker is a resident and citizen of Chesapeake, Virginia. On October 10, 2018, Mr. Parker purchased a 2015 Audi Q7 from Audi of Virginia Beach. At the time of purchase, Mr. Parker did not know about the latent Timing Chain System defect. Since the purchase, Mr. Parker has noticed that his vehicle rattles on a cold start. Mr. Parker would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

31.      Plaintiff and proposed class representative Richard Rehak is a resident and citizen of East Greenville, Pennsylvania. In October of 2017, Mr. Rehak purchased a 2013 Audi Q7 from Audi of Allentown in Allentown, Pennsylvania. The vehicle had approximately 31,000 miles on the odometer at the time of purchase. At the time of purchase, Mr. Rehak did not know about the latent Timing Chain System defect. Mr. Rehak would not have purchased the vehicle

had Defendants disclosed the latent Timing Chain System defect.

32.        Plaintiff and proposed class representative Mr. Travis Sides is a resident and citizen of Jamestown, North Carolina. In June of 2018, Mr. Sides purchased a 2012 Audi A7 from Highline Auto Sales, Inc. in Willowbrook, Illinois. On December 21, 2018, Mr. Sides was forced to replace the timing chain and guides in his Audi A7. This repair of the latent Timing Chain System cost Mr. Sides approximately $5,800. At the time of purchase, Mr. Sides did not know about the latent Timing Chain System defect. Mr. Sides would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

33.        Plaintiff and proposed class representative Mr. Sheng Su is a resident and citizen of Jamacia, New York. In January of 2019, Mr. Su purchased a 2011 Audi Q7. Since the date of purchase, Mr. Su has experienced the "rattling noise," which is a typical precursor to a potentially catastrophic manifestation of the latent Timing Chain System defect. At the time of purchase, Mr. Su did not know about the latent Timing Chain System defect. Mr. Su would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

34.        Plaintiff and proposed class representative Mrs. Zola Thornton is a resident of Johnson City, Tennessee. In August of 2019, Mrs. Thornton purchased a 2014 Audi A7 from HGreg in Miami, Florida. At the time of purchase, Mrs. Thornton did not know about the latent Timing Chain System defect. Mrs. Thornton would not have purchased the vehicle had Defendants disclosed the latent Timing Chain System defect.

### B.        **Defendants**

35.        Defendant Volkswagen Aktiengesellschaft ("VWAG" or "VW Germany") is a German corporation with its principal place of business in Wolfsburg, Germany. VWAG is the parent company of VWGOA. Volkswagen AG designs, develops, manufacturers, and sells

automobiles.

36.     On January 11, 2017, VWAG entered into a plea agreement (the "Criminal Plea Agreement") with the United States of America, by and through the Department of Justice, by which VWAG pled guilty to: (1) a violation of 18 U.S.C. §371 (Conspiracy to commit offense or to defraud United States), (2) obstruction of justice in violation of 18 U.S.C. §1512(c), and (3) introducing imported merchandise into the United States by means of false statements in violation of 18 U.S.C. §542.

37.     As a term of the Criminal Plea Agreement, VWAG agreed to three years of probation, which required, *inter alia*, that VWAG commit no further crimes, be truthful at all times with the Court, and to implement a compliance and ethics program designed to prevent and detect fraudulent conduct throughout its operations.

38.     Volkswagen Group of America, Inc., d/b/a Audi of America, Inc. ("VWGOA" or "VW America") is a corporation organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171, within this judicial district. VWGOA is a wholly-owned subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing, and sale of VW automobiles nationwide.

39.     Audi Aktiengesellschaft ("Audi AG") is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is a wholly-owned subsidiary of VW Germany. Audi AG designs, develops, manufacturers, and sells automobiles.

40.     At all relevant times, VW America acted as an authorized agent of VW AG and Audi AG while performing various activities in the Commonwealth of Virginia, including but not limited to advertising, sales, issuance of warranties, warranty repairs, dissemination of

technical information, and monitoring the performance of VW and Audi vehicles in the United States, including substantial activities that occurred within this judicial district.

41.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW and Audi brand names throughout the United States. Defendants designed, manufactured, and/or installed the defective Timing Chain System in the Class Vehicles. Defendants also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

42.     VW America, VW Germany, and Audi AG operate a joint venture for their mutual benefit (the "Joint Venture") whereby those parties agreed to assist each other in designing, manufacturing, importing, marketing, distributing, selling, and warranting motor vehicles in the United States, including the Class Vehicles at issue in this case. At the critical stages in the foregoing activities, VWGOA, VWAG, and Audi AG acted as the agent for each other in pursuing their common goal of selling Volkswagen-branded and Audi-branded automobiles in the United States, including the Class Vehicles. At all relevant times herein, VWGOA, VWAG and Audi AG each maintained a voice in the control and management of this Joint Venture, and each shared in the profits and losses of the enterprise. The Joint Venture arose in Virginia and is centered in Virginia, and therefore, Virginia law controls the rights and liabilities of the Joint Venture vis-à-vis third parties. Under Virginia law, each joint venturer is jointly and severally liable for tortious acts committed in furtherance of the enterprise. Given the foregoing, VWGOA, VWAG, and Audi AG are jointly and severally liable for the tortious acts of each other, including those acts set forth herein relating to the Class Vehicles. The term "Volkswagen" as used herein refers to both the Joint Venture and collectively to VWGOA,

VWAG, and Audi AG.

## III.    AGENCY

43.    At all relevant times herein, VWGOA, VWAG, and Audi AG acted as the agents of each other, and the fraudulent concealment at issue in this lawsuit and described below in more detail was committed by VWGOA, VWAG, and Audi AG with knowledge that consumers, including Plaintiffs and members of the Classes, would be harmed. Each of the Defendants knowingly and intentionally concealed the fact of the latent Timing Chain System defect, a fact that was material to Plaintiffs' and Class Members' purchases of the Class Vehicles, all while knowing that Plaintiffs and Class Members were acting on the assumption that no such latent defect existed.

## IV.    SUBJECT MATTER JURISDICTION

44.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; this is a class action in which there are more than 100 members of the Classes; and there is at least minimal diversity.

## V.    PERSONAL JURISDICTION

### A.  VW America

45.    Personal jurisdiction over VW America in Virginia is proper because it is a corporate citizen of Virginia, having registered to do business with the Virginia State Corporation Commission, and maintaining its principal place of business in Fairfax County, Virginia.

### B.    VW Germany

46.    Personal jurisdiction over VW Germany in Virginia is proper because

VWAG, directly and indirectly: (a) transacts business in Virginia; (b) supplies services or things in Virginia; (c) caused tortious injury by an act or omission in Virginia; (d) caused tortious injury in Virginia by an act or omission outside Virginia; and, (e) regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in Virginia. *See* Va. Code § 8.01-328.1. This includes all sales of the Volkswagen Class Vehicles, which were manufactured by VW Germany and shipped to the United States, whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by VWAG.

47.     Personal jurisdiction over VW Germany in Virginia is also proper because the Virginia contacts of VW America concerning the fraudulent concealment that forms the basis of this lawsuit can be imputed to VW Germany pursuant to the agency relationship that exists between and among the parties and also by virtue of the Joint Venture. For all the foregoing reasons, personal jurisdiction over VWAG in Virginia is proper.

## C.     Audi AG

48.     Personal jurisdiction over Audi AG in Virginia is proper because Audi AG, directly and indirectly: (a) transacts business in Virginia; (b) supplies services or things in Virginia; (c) caused tortious injury by an act or omission in Virginia; (d) caused tortious injury in Virginia by an act or omission outside Virginia; and, (e) regularly does or solicits business, engages in a persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in Virginia. *See* Va. Code § 8.01-328.1. This includes all sales of the Audi-branded Class Vehicles, all of which were manufactured by Audi AG and shipped to the United States, whereupon title was transferred to VWGOA in Virginia by virtue of a manufacturer's certificate of origin issued by Audi AG.

49.     Personal jurisdiction over Audi AG in Virginia is also proper because the Virginia contacts of VW America concerning the fraudulent concealment that forms the basis of this lawsuit can be imputed to Audi AG pursuant to the agency relationship that exists between and among the parties and also by virtue of the Joint Venture.  For all the foregoing reasons, personal jurisdiction over Audi AG in Virginia is proper.

## VI.     VENUE

50.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Specifically, Volkswagen directed and controlled the acts that give rise to the allegations set forth in this lawsuit from VWGOA's headquarters in Herndon, Virginia.

## VII.     FACTUAL ALLEGATIONS

### A.   The Fourth-Generation EA837 Engine and 3.0L TSI Engine with Supercharger

51.     Defendants are manufacturers of vehicles sold under the VW and Audi brands throughout the United States. Defendants designed, manufactured, imported, distributed, marketed, and sold the Class Vehicles in the United States. Defendants also administer applicable warranties and provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

52.     Plaintiffs and members of the Classes purchased, leased, own, owned, and/or lease Class Vehicles.

53.     The Class Vehicles are equipped with 3.0L TFSI fourth-generation EA837 engines or 3.0L TSI engines with supercharger (the "Class Engines") in model year 2011-2015 vehicles. These engines contain the defective Timing Chain System, which is prone to premature failure, creating a safety risk, damaging engines, and in many cases forcing Plaintiffs and members of the Classes to pay thousands of dollars to repair or replace the damaged engine parts

16

or entire engine. The Audi Class Vehicles are equipped with fourth-generation EA837 3.0L TFSI engines designated with engine codes CCAA, CCBA, CGXB, CGXC, CGXD, CJWB, CJWC, CJWE, CREC, CTUA, CTUB, CTUC, CTUD, CTWA, and CTWB. The Volkswagen Class Vehicles are equipped with 3.0L TSI engines with supercharger designated with engine code CGFA.

54.     Among other updates from earlier engines, the fourth-generation EA837 engine is equipped with the defective Timing Chain System as alleged herein. According to the Fourth-generation Audi 3.0L V6 TFSI engine EA837 (evo) self-study program, "The third-generation 3.0L V6 TFSI engine was revised with the aim of significantly improving fuel economy while retaining all the desirable characteristics of the previous engine. This was achieved by making the modifications listed below. Friction in the base engine was reduced by 9 % by utilizing an improved chain drive." *See* Exhibit B at 2.

55.     Volkswagen Class Vehicles equipped with 3.0L TSI engines with supercharger are equipped with the defective Timing Chain System as alleged herein. According to the "3.0L V6 245kW TSI engine with supercharger in the Touareg Hybrid" self-study program, "The 3.0 l V6 engine with supercharger and hybrid drive sees Volkswagen employ a new drive concept. The engine is fitted in the Touareg Hybrid model year 2011 ... The engine has already been used at Audi without the hybrid combination." *See* Exhibit C at 2.

56.     Audi and Volkswagen Class Vehicles are all equipped with the same timing chain tensioner.  Part numbers for the replacement timing chain tensioner are indicated in Audi Service Bulletin, TSB-15-16-28. The replacement part numbers, 06E109217AH and 06E109218AJ, and the parts they superseded indicate the Class Vehicles all use the same part

17

based on Audi and Volkswagen online parts catalogs.[5]

### B.   Timing Chain Systems

57.     In order for a conventional four stroke internal combustion engine such as the Class Engines to function, fuel and air must be mixed in a cylinder and the mixture is then ignited with a spark. The resulting "combustion" causes the pistons to reciprocate and the crankshaft to rotate. Waste products of the combustion process are then removed to permit further combustion to occur. In a conventional gasoline powered automobile, the combustion occurs in an engine cylinder. The addition of fuel and air, ignition, and the removal of combustion products must occur in a carefully regulated sequence to permit the engine to operate.

58.     To regulate the intake of fuel and air and the exhaust of waste byproducts, all Class Vehicles contain a timing system that controls the timing of the opening and closing of the engine's intake valves (responsible for releasing fuel and air into the engine cylinder) and exhaust valves (responsible for clearing the byproducts of combusted fuel and air). A timing chain connects the crankshaft (connected to the pistons) to the camshafts—which open and close the cylinder valves. The camshafts are designed to open and close both the intake and exhaust valves in specifically timed intervals, which are synchronized to the pistons.

59.     The Class Engines are both six-cylinder supercharged gasoline engines,

---

[5] *See* VW Online Store and Catalog, https://parts.vw.com/p/Volkswagen__/TENSIONER /54570609/06E109217AH.html (last visited October 17, 2019); VW Online Store and Catalog, https://parts.vw.com/p/Volkswagen__/Engine-Timing-Chain-Tensioner-Tension-arm--Cam-To-Cam/75727534/06E109217AM.html (last visited October 17, 2019); Audi of America, https://parts.audiusa.com/p/Audi__/TENSIONER/54570609/06E109217AH.html (last visited October 17, 2019); Audi of America, https://parts.audiusa.com/p/Audi__/Engine-Timing-Chain-Tensioner-Tension-arm--Cam-To-Cam/75727534/06E109217AM.html (last visited October 17, 2019).

employing a double overhead camshaft ("DOHC") configuration with two camshafts connected

to the crankshaft by a timing chain to ensure that the operating cycle is timed correctly. Both

engines are interference engines, which is a type of four-stroke engine in which one or more of

the intake or exhaust valves, in the fully open position, extend into the area into which the piston

also travels.

60.     In an interference engine, if the camshaft timing is sufficiently off due to a

stretched, broken, or dislocated timing chain, catastrophic engine failure occurs because the

pistons will slam into the valves, leading to damaged pistons or valves (or both) and requiring

expensive repair or replacement of the engine. Figure 1, below, is a diagram of the labeled

components of a DOHC engine with one dedicated camshaft to regulate the intake valves and

one dedicated camshaft to regulate the exhaust valves.



**E**: the exhaust camshaft

**I**: the intake camshaft

**S**: the spark plug

**V**: the valves

**P**: the piston

**R**: the Piston connecting rod

**C**: the crankshaft

**W**: water jacket for coolant flow

**FIGURE 1**

61.     The four-stroke cycle is demonstrated by Figures 2 through 5 below.



**FIGURE 2:**
**INTAKE**

**FIGURE 3:**
**COMPRESSION**

**FIGURE 4:**
**IGNITION**

**FIGURE 5:**
**EXHAUST**

62.     Figure 2 illustrates the "Intake" stage of the cycle. In this stage of the cycle, the intake camshaft actuates the intake valve allowing the fuel and air mixture to enter the piston combustion chamber.

63.     Figure 3 illustrates the "Compression" stage of the cycle. In this stage of the cycle, the intake valve camshaft and the exhaust valve camshaft disengage from actuating the respective valves allowing the piston chamber to close. The rising piston compresses the mixture of air and fuel immediately below the spark plug for optimal combustion.

64.     Figure 4 illustrates the "Ignition" or "Power" stage of the cycle. In this stage of the cycle, the spark plug ignites the compressed mixture of air and fuel in the sealed piston combustion chamber. This ignition and the resultant expansion of gas drives the piston down.

65.     Figure 5 illustrates the "Exhaust" stage of the cycle. In this stage of the cycle, the exhaust camshaft actuates the exhaust valve allowing the rising piston to expel the combusted mixture of air and fuel.

66.     The same process detailed above repeats itself for all of the engine's pistons in a synchronized fashion.

67.     For this four-stroke cycle to operate as designed, the crankshaft and the camshafts must be connected so that piston movement and valve actuation are fully synchronized. A physical connection between the crankshaft and camshaft is typically maintained using a timing belt or a timing chain. The Class Vehicles use a timing chain to maintain the connection between the crankshaft and the camshaft. In the event of timing system failure, synchronization is lost and the four-stroke cycle will be disrupted causing problems such as an inability to start, accelerate, or maintain speed, immediate power loss, and/or catastrophic engine failure.

68.     When a piston drives into open intake or exhaust valves, extensive damage can be caused to the engine, typically resulting in sudden failure. Numerous dangerous conditions can occur as a result of sudden engine failure, including stoppage on busy roadways as well as loss of power-assisted brakes and the power steering system. In these circumstances, additional force is required to steer and stop the vehicle.

69.     Thus, a properly functioning Timing Chain System is crucial to the safe and reliable operation of the Class Vehicles.

## C.     The Defective Timing Chain System

70.     Based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles, a Timing Chain System is intended and reasonably expected to last for the useful life of the engine and at least 130,000 miles[6] without the need for repair or replacement.

71.     According to the Class Vehicles' maintenance schedules, the Timing Chain System in the Class Vehicles is expected to last beyond the warranty periods and should not

---

[6] *See* Exhibit A at 3.

require any maintenance or even inspection during the useful life of the engine. For example, the 2011-2017 MY Audi Maintenance Schedule (for all models) does not require maintenance or inspection of the Timing Chain System within 130,000 miles (the highest number of miles shown in the maintenance schedule) for any of the Class Vehicles. *See* Exhibit A. Thus, the failure of the Timing Chain System in the Class Vehicles occurs prematurely and before any reasonable consumer would expect the failure to occur.

72.     The figures below depict the Timing Chain System in the Audi 3.0L V6 TFSI and the VW 3.0L TSI:



**FIGURE 6:  Audi 3.0L V6 TFSI Timing Chain System[7]**

---

[7] *See* Exhibit B at 13, Self Study Programme 624 – Fourth-generation Audi 3.0l V6 TFSI engine EA837 (evo) (callouts added).



**FIGURE 7:  VW 3.0L TSI Timing Chain System[8]**

73.      The source of the latent defect in the Timing Chain System is labeled the "Hydraulic Tensioner" (the "Chain Tensioner") in the above illustrations. The Chain Tensioner is an internal engine component that automatically controls tension on the timing chain and is intended to prevent the timing chain from skipping. The Chain Tensioner is critical because if tension is not maintained on the timing chain, the chain can "jump a tooth" on the camshaft drive sprocket and set off a chain reaction—causing bent valves, extensive damage to engine parts, and, ultimately, catastrophic engine failure.

74.      The Chain Tensioner controls tension by utilizing oil pressure augmented by an internal spring to push an integrated piston with a controlled force against a timing chain tensioning rail that presses against the chain and keeps it in proper tension. There is only oil pressure tensioning the chain, however, when the vehicle is turned on and the engine is running.

---

[8] *See* Exhibit C at 11, Self Study Programme 452 – The 3.0 l V6 245kW TSI engine with supercharger in the Touareg Hybrid (callouts added).

24

When the vehicle is turned off and during startup, when there is no oil pressure or oil pressure is low, the Chain Tensioner uses only the spring force to keep the piston from collapsing and releasing the tension in order to keep the chain tight. The following photographs of a defective Chain Tensioner (part number 06E109218AC, engine timing chain tensioner, tension arm, upper right)[9] obtained from a Class Vehicle highlight the main parts of the Chain Tensioner:



**FIGURE 8: Chain Tensioner p/n 06E109218AC**



**FIGURE 9: Plunger Assembly**

---

[9] Other chain tensioners have been identified by the following part numbers: 06E109217AB and 06E109217AD, engine timing chain tensioner, tension arm, upper left.



**FIGURE 10: Plunger Assembly Cross-section**

75.       In the Chain Tensioner, the inlet for hydraulic oil is connected to the high-pressure chamber by a check valve mounted on the inner plunger, Figure 10. The check valve permits oil to freely flow from the inlet to the high-pressure chamber as the plunger protrudes from the housing. Thus, the hydraulic pressure of the oil and the force exerted by the spring cause the plunger to impart tension to a chain. On the other hand, chain tension may become greater than the combined force of the spring and oil pressure. At this point, chain tension will tend to force the plunger in the reverse direction, inwardly towards the housing. The check valve, however, restricts the reverse flow of oil from the high-pressure chamber to the inlet. Due to the incompressibility of oil, the piston is thus limited in its reverse movement within the piston chamber. In such a fashion, the tensioner achieves a so-called no-return function, i.e., movements are easy in one direction but difficult in the reverse direction. A small clearance between the two halves of the plunger, the leakage gap, permits limited fluid flow out of the high-pressure chamber. This allows the piston some limited movement in the reverse direction, i.e., to retract somewhat. This feature provides for excessive tensioning forces to be attenuated.

26

However, if no oil pressure is present, excessive tensioning forces will cause the increased retraction of the plunger.  Thus, the piston does not hold the proper tension on the chain when the engine is off and during engine startup during the short time before engine oil pressure is built up to its normal level. As a result, the low tension on the chain can allow the chain to "jump a tooth" on a camshaft drive sprocket, causing the camshaft to be "out of time" with the crankshaft and pistons.

76.     Thus, when the engine is "out of time," valves will open and close at the wrong time, allowing the pistons to hit and bend the valves when the pistons come up on the compression stroke.

77.     Figure 11 below, demonstrates how the valves bend after being struck by the piston:



**FIGURE 11**

78.     Bent valves, as shown in Figure 11, are a very significant repair item on an engine and cost thousands of dollars to repair.

79.     No reasonable consumer expects to spend thousands of dollars to repair or

replace essential engine components (or the entire engine) during the useful life of the engine. Further, Plaintiffs and members of the Classes do not reasonably expect their Timing Chain System to fail before the end of the useful life of the engine (*see supra*, ¶ 8 & n.3) or to pay to repair or replace their Timing Chain System or engine in the event of a Timing Chain System failure.

80.     As a direct result of Defendants' wrongful concealment of the latent Timing Chain System defect, Plaintiffs and members of the Classes have been or will be forced to pay thousands of dollars to replace or repair the Timing Chain System, other parts affected by the system's failure, and/or the entire engine.

81.     As detailed herein, Plaintiffs and members of the Classes also suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' material misrepresentations and knowing and intentional concealment of the true standard, quality, or grade of the Class Vehicles and/or the existence of the latent Timing Chain System defect. The fact that the Timing Chain System is prone to premature failure is material to Plaintiffs and members of the Classes both because it subjects Plaintiffs and members of the Classes to unexpected costs of repair or replacement ranging in the thousands of dollars, and because the sudden failure of the Timing Chain System presents a risk of injury and/or death to drivers and passengers of the Class Vehicles. The Timing Chain System is an integral component of the Audi 3.0L V6 TFSI and the VW 3.0L TSI engines in the Class Vehicles and its failure can lead to the inability to accelerate or maintain speed and/or catastrophic engine failure. These types of failures subject drivers and passengers of the Class Vehicles to safety risks, including the potential for rear-end collisions and other accidents. As  a  result  of  Defendants'  material  misrepresentations  and  knowing  and  intentional

concealment, including the failure to disclose that the Class Vehicles are prone to premature Timing Chain System failure, Defendants have recklessly placed Plaintiffs and members of the Classes and the occupants of the Class Vehicles at risk.

**D.      Defendants' Knowledge of the Timing Chain System Defect**

82.      Defendants knowingly and intentionally concealed from Plaintiffs and members of the Classes the latent Timing Chain Defect in the Class Vehicles.

83.      Knowledge and information regarding the Timing Chain System defect were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and members of the Classes. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and testing performed in response to consumer complaints, *inter alia*, Defendants were aware of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and members of the Classes. Defendants knew that the latent Timing Chain System defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

84.      Defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in the Timing Chain Systems shortly after production of the Class Vehicles

commenced. Defendants engaged in extensive field research and quality investigations and analysis before redesigning the specifications for the defective part, rebidding the new part, and manufacturing and distributing the new part. In addition, Defendants have a continuing legal obligation pursuant to federal law to monitor defects that can cause a safety issue and to report them within five working days of learning of them. *See* 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6.[10] Defendants therefore assiduously monitor warranty claims rates, customer complaints, and the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

85.     As recognized in the Class Vehicles' owner's manuals, Defendants knew that any defect that can potentially lead to engine failure, such as the Timing Chain System defect, presents a serious safety risk.

86.     Numerous dangerous conditions occur when the engine suddenly fails, including that the power-assisted brakes may cease operating and the power steering system fails. Thus, additional force is required to steer and stop the vehicle, and drivers and occupants are at risk for accidents.  Additionally, engine failure on any roadway presents a serious foreseeable safety risk due to the presence of other moving vehicles.

---

[10] *See also* 49 C.F.R. § 576.6 (providing, "Records to be maintained by manufacturers under this part include all documentary materials, films, tapes, and other information-storing media that contain information concerning malfunctions that *may be related to motor vehicle safety*. Such records include, but are not limited to, reports and other documents, including material generated or communicated by computer, telefax or other electronic means, that are related to work performed under warranties; and any lists, compilations, analyses, or discussions of such malfunctions contained in internal or external correspondence of the manufacturer, including communications transmitted electronically.") (emphasis added); 49 C.F.R. § 576.8 (providing, "For purposes of this part, 'malfunctions that may be related to motor vehicle safety' shall include, with respect to a motor vehicle or item of motor vehicle equipment, any failure or malfunction beyond normal deterioration in use, or any failure of performance, or any flaw or unintended deviation from design specifications, that could *in any reasonably foreseeable manner* be a causative factor in, or aggravate, an accident or an injury to a person.") (emphasis added).

87.     Notwithstanding Defendants' exclusive, detailed, and superior knowledge of the Timing Chain System defect and Defendants' communication of the defect to their dealer network, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or at any time thereafter) and continued to sell Class Vehicles containing the defect through and including the 2015 model year. Defendants have knowingly and intentionally concealed the fact that the Timing Chain System is defective, prone to premature failure, and presents a safety risk, rather than disclosing this risk to consumers including the Plaintiffs, members of the Classes, and the public, despite their legal duty to do so.

**1.     Technical Service Bulletins**

88.     As a result of their exclusive and superior knowledge regarding the defective Timing Chain System, Defendants released TSBs describing this precise issue to their exclusive network of dealerships beginning in or around March 2015.

89.     On or around March 3rd, 2015, Defendants released TSB-15-15-26, describing timing chain issues with all 2011-2014 V6 3.0L TFSI engines: "Condition:  Rattling noises are heard from the timing chain drive for about 1-3 seconds after the first engine start of the day. Technical Background: The noises are caused by one of the upper chain tensioners. The noises do not lead to damage. Production Solution:  Improved chain tensioner."  *See* Exhibit D at 1.[11]

90.     On or around April 27th, 2016, Defendants released a revised TSB (TSB-15-16-28) with a breakdown of affected models and years produced, essentially adding all 2015 model years with 3.0 TFSI engines to the list.  *See* Exhibit E.

91.     Plaintiffs were never provided with copies of, or information about, the TSBs

---

[11] In truth, the Timing Chain Defect can and has led to damage.

described above. Further, the TSBs were not directly communicated to consumers or members of the class. Thus, despite the safety risk associated with the defective Timing Chain System, Defendants failed to disclose the defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes, and, instead, knowingly and intentionally concealed the defect.

92.     The TSBs, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, and testing performed in response to consumer complaints, evidence that as early as 2011, Defendants had exclusive and superior knowledge regarding the latent Timing Chain System defect. Further, Defendants gained their knowledge of the defect through sources not available to Plaintiffs and members of the Classes.

## 2.     National Highway Traffic Safety Administration Complaints

93.     In addition to the TSBs and other evidence of Defendants' knowledge of the Timing Chain System defect, Defendants had knowledge of the defect due to consumer complaints such as those made to the NHTSA, which Defendants monitor as part of their continuing legal obligation, as described above, to identify potential defects in their vehicles.[12]

94.     Despite these complaints and their own knowledge, Defendants have yet to issue a recall or even inform owners and lessees of the latent Timing Chain System defect and

---

[12] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA. There are penalties for submitting false statements.

its associated safety risk.

95.     Defendants' deceptive acts, misrepresentations, and knowing and intentional concealment regarding the latent Timing Chain System defect create a safety risk not only for drivers and occupants of the Class Vehicles, but also for members of the public who may be involved in accidents with Class Vehicles that experience a Timing Chain System failure while they are being driven.

**3.     The Chain Tensioner Redesign**

96.     With the exclusive and superior knowledge that the Chain Tensioner exhibited defects that caused the timing chain to skip a sprocket thereby disrupting the engine timing, Defendants introduced the redesigned the Chain Tensioner in or around 2015.

97.     The redesigned chain tensioners (the "Redesigned Tensioner"), part numbers 06E109217AH and 06E109218AJ, are substantially different from the original defective Chain Tensioner.

98.     Figure 14 below, is a side-by-side comparison of the defective Chain Tensioner and the Redesigned Tensioner:



**FIGURE 14**

99.     These two designs have substantial differences. Most notably, the inner plunger diameter has been increased (Figure 14) and the length of the shoulder on the outer plunger has been lengthened.  Both changes result in a reduced oil leakage and greater retention of pressure in the high-pressure chamber of the Chain Tensioner plunger.

100.     Based on a preliminary analysis of the defective Chain Tensioner and the Redesigned Tensioner, a materially significant number of vehicles with the Chain Tensioner will likely experience early failures before the design life of the Chain Tensioner is attained.

Given that the Chain Tensioner is integral to the engine and is time-consuming and expensive to replace, the design life of the Chain Tensioner should be coextensive with the design life of the engine. A properly designed chain tensioner and timing chain should last for a minimum of 150,000 miles before requiring replacement. The Audi Self Study Program for the 3.0L TFSI engine lists the maintenance interval for the timing drive/chain and timing drive tensioning system as "***Lifetime***." *See* Exhibit B at 45 (emphasis added).

## VIII. Tolling of the Statute of Limitations

### A. Discovery Rule Tolling

101.    Plaintiffs and Class Members had no way of knowing about Volkswagen's deception with respect to the inclusion of the defective Timing Chain System in the Class Vehicles.

102.    Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was knowingly and intentionally concealing the conduct complained of herein and misrepresenting the quality of the defective Timing Chain System in the Class Vehicles.

103.    Plaintiff and the other Class Members did not discover and did not know of facts that would have caused a reasonable person to suspect that Volkswagen did not report information within its knowledge to federal and state authorities or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had concealed information about the inferior quality and safety risks of the defective Timing Chain System in the Class Vehicles. Nor would such an investigation on the part of Plaintiffs and other Class Members have disclosed that Volkswagen valued profits over truthful marketing and compliance with federal and state law.

104.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

## B.     **Fraudulent Concealment Tolling**

105.     All applicable statutes of limitation have also been tolled by: (i) Volkswagen's fraudulent concealment of the facts that are the basis of the Plaintiffs' and Class Members' claims, and (ii) Plaintiffs' and Class Members' failure to discover those facts within the statutory period(s), despite the exercise of due diligence. In other words, Defendants deceived or misled Plaintiffs and Class Members in order to conceal the existence of a cause of action, all in order to avoid a recall and to preserve its profits.

106.     Instead of disclosing the defective nature of the Timing Chain System and issuing a recall to all owners of Class Vehicles, as it was required to do under federal law, Volkswagen failed to issue a recall and denied warranty claims, representing that the Timing Chain System would last for the useful life of the Class Vehicles.

## C.     **Estoppel**

107.     Volkswagen was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the Timing Chain System in the Class Vehicles.

108.     Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Timing Chain System.

109.     Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## IX.     CLASS ACTION ALLEGATIONS

110.     Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil

Procedure 23(a); (b)(1); (b)(2); (b)(3); and/or (c)(4), on behalf of themselves and all others similarly situated as members of the following Nationwide Class and State Classes (collectively, the "Classes") on their federal and state claims as the purchasers or lessees of the Class Vehicles.

111.    The Class Vehicles are defined as follows:

All Volkswagen-branded or Audi-branded vehicles sold in the United States that contain the defective Timing Chain System. The defective Timing Chain System was installed in at least the following vehicles equipped with a fourth-generation EA837 engine:

(a) 2015 Audi A5;
(b) 2011-2015 Audi A6;
(c) 2012-2015 Audi A7;
(d) 2013-2015 Audi A8;
(e) 2013-2015 Audi Q5;
(f) 2011-2015 Audi Q7;
(g) 2011-2015 Audi S4;
(h) 2011-2015 Audi S5;
(i) 2014-2015 Audi SQ5; and
(j) 2011-2015 Volkswagen Touareg.

112.    The proposed Classes are defined as:

**Nationwide Class**

All persons and entities in the United States who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Alabama Subclass**

All persons and entities in Alabama who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Alaska Subclass**

All persons and entities in Alaska who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Arizona Subclass**

All persons and entities in Arizona who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Arkansas Subclass**

All persons and entities in Arkansas who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The California Subclass**

All persons and entities in California who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Colorado Subclass**

All persons and entities in Colorado who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Connecticut Subclass**

All persons and entities in Connecticut who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Delaware Subclass**

All persons and entities in Delaware who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Florida Subclass**

All persons and entities in Florida who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Georgia Subclass**

All persons and entities in Georgia who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Hawaii Subclass**

All persons and entities in Hawaii who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Idaho Subclass**

All persons and entities in Idaho who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Illinois Subclass**

All persons and entities in Illinois who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Indiana Subclass**

All persons and entities in Indiana who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Iowa Subclass**

All persons and entities in Iowa who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Kansas Subclass**

All persons and entities in Kansas who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Kentucky Subclass**

All persons and entities in Kentucky who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Louisiana Subclass**

All persons and entities in Louisiana who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Maine Subclass**

All persons and entities in Maine who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Maryland Subclass**

All persons and entities in Maryland who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Massachusetts Subclass**

All persons and entities in Massachusetts who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Michigan Subclass**

All persons and entities in Michigan who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Minnesota Subclass**

All persons and entities in Minnesota who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Mississippi Subclass**

All persons and entities in Mississippi who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Missouri Subclass**

All persons and entities in Missouri who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Montana Subclass**

All persons and entities in Montana who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Nebraska Subclass**

All persons and entities in Nebraska who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Nevada Subclass**

All persons and entities in Nevada who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The New Hampshire Subclass**

All persons and entities in New Hampshire who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The New Jersey Subclass**

All persons and entities in New Jersey who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The New Mexico Subclass**

All persons and entities in New Mexico who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The New York Subclass**

All persons and entities in New York who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The North Carolina Subclass**

All persons and entities in North Carolina who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The North Dakota Subclass**

All persons and entities in North Dakota who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Ohio Subclass**

All persons and entities in Ohio who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Oklahoma Subclass**

All persons and entities in Oklahoma who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Oregon Subclass**

All persons and entities in Oregon who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Pennsylvania Subclass**

All persons and entities in Pennsylvania who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Rhode Island Subclass**

All persons and entities in Rhode Island who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The South Carolina Subclass**

All persons and entities in South Carolina who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The South Dakota Subclass**

All persons and entities in South Dakota who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Tennessee Subclass**

All persons and entities in Tennessee who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Texas Subclass**

All persons and entities in Texas who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Utah Subclass**

All persons and entities in Utah who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Vermont Subclass**

All persons and entities in Vermont who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Virginia Subclass**

All persons and entities in Virginia who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Washington Subclass**

All persons and entities in Washington who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The West Virginia Subclass**

All persons and entities in West Virginia who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Wisconsin Subclass**

All persons and entities in Wisconsin who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The Wyoming Subclass**

All persons and entities in Wyoming who own and/or lease or who previously owned and/or leased a Class Vehicle.

**The District of Columbia Subclass**

All persons and entities in the District of Columbia who own and/or lease or who previously owned and/or leased a Class Vehicle.

113.     Excluded from the Classes are: (a) Defendants, including any entity or division in which Defendants have a controlling interest, as well as their officers, directors, employees, agents, representatives, successors, and assigns, and other persons or entities related to or affiliated with Defendants; (b) the Judges to whom this case is assigned, their staff, and their immediate families; and (c) governmental entities. Plaintiffs reserve the right to amend the

Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

114. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

115. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

## D. Numerosity and Ascertainability

116. The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are believed to be at least 20,000 members in the Nationwide Class, and a hundred or more members in each State Class. The precise number and identities of Nationwide Class and State Classes may be ascertained from Volkswagen's books and records and motor vehicle regulatory data. Accordingly, the disposition of the claims of Class members in a single action will provide substantial benefits to all parties and to the Court. Class members may be readily notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

## E. Typicality

117. The claims of the representative Plaintiffs are typical of the claims of the other Class members in that the representative Plaintiffs, like all Class members, purchased a Class Vehicle designed, manufactured, distributed, sold, and warranted by Volkswagen. The

representative Plaintiffs, like all Class members, have been damaged by Defendants' misconduct in that they have incurred similar or identical losses relating to the Class Vehicles. Furthermore, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members.

### F.      Predominance of Common Questions

118.      There are numerous questions of law and fact common to Plaintiffs and Class members that predominate over any question affecting only individual Class members. The answers to these common questions will advance the adjudication or resolution of the litigation as to all Class members. These common legal and factual questions include:

- whether Volkswagen knowingly and intentionally concealed or failed to disclose material facts about the latent Timing Chain System Defect and Class Vehicles;

- whether Volkswagen had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

- whether Volkswagen's concealment of the defective nature of the Class Vehicles would have induced a reasonable consumer to act to their detriment by purchasing one of the Class Vehicles;

- whether Volkswagens' conduct violated consumer protection statutes, warranty laws, and other laws as alleged herein;

- whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and,

- whether Plaintiffs and Class members are entitled to damages and other monetary relief, and, if so, in what amount.

### G.      Superiority

119.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs and Class members have all suffered and will continue to suffer economic harm and damage as a result of Defendants' unlawful and

wrongful conduct, which was directed toward Class members and the public as a whole, rather than specifically or uniquely against any individual Class members.

120.     Volkswagen has acted in a uniform manner with respect to the Plaintiffs and Class members. Absent a class action, many Class members would likely find the cost of litigating their claims prohibitively high and may therefore have no effective remedy at law. Because of the relatively small size of many of the individual Class members' claims, it is likely that only some of the Class members could afford to seek legal redress for Volkswagen's misconduct. Absent a class action, Class members will continue to incur damages, and Volkswagen's misconduct will continue without effective remedy.

121.     Class treatment in this Court will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication by providing common answers to the common questions of knowledge, conduct, duty, and breach, that predominate in this action.

122.     Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests. Class-wide relief and Court supervision under Rule 23 will assure fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Volkswagen's discharge of its duties to perform corrective action regarding the Class Vehicles.

## CLAIMS FOR RELIEF

### COUNT I:
### IMPLIED AND WRITTEN WARRANTY
### Magnuson - Moss Warranty Act (15 U.S.C. § § 2301, *et seq.*)

123.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

124.     Plaintiffs asserts this cause of action on behalf of themselves and the other members of the Class.

125.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

126.     The Class Vehicles containing the Timing Chain System Defect are each a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

127.     Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

128.     Each Defendant is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

129.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

130.     As described herein, Defendants provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301.

131.     Defendants have breached these warranties as described in more detail above. Without limitation, the Class Vehicles containing the Timing Chain System are defective, as described above, which resulted in the problems and failures also described above.

132.     By Defendants' conduct as described herein, including knowledge of the defects inherent in the vehicles and Defendants' action, and inaction, in the face of the

46

knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

133.    In their capacity as warrantors, and by the conduct described herein, any attempts by Defendants to limit the implied warranties in a manner that would exclude coverage of the defective systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective systems is null and void.

134.    All jurisdictional prerequisites have been satisfied.

135.    Plaintiffs and members of the Class are in privity with Defendants in that they purchased the Class Vehicles from Defendants or their agents and the warranties associated with the Class Vehicles extend to the Plaintiffs and members of the Class.

136.    As a result of Defendants' breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

## COMMON LAW CLAIMS

## <u>COUNT II</u>

### Fraudulent Concealment Claims Brought on Behalf of all Class Members

137.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

138.    Plaintiffs bring this Count on behalf of the Nationwide Class and, in the alternative, on behalf of each of the State Classes against all Defendants.

139.    Volkswagen intentionally concealed that the Timing Chain System in the Subject Vehicles was defective, or Volkswagen acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that was material to their purchasing decision.

140.     Volkswagen further affirmatively misrepresented to Plaintiffs, including standard and uniform material provided with each car, that the Subject Vehicles had no significant defects, would perform and operate properly when driven in normal usage, and would require no Timing Chain System maintenance for the useful life of the engine.

141.     The Subject Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective and unreliable because of the Timing Chain System Defect as described more thoroughly above.

142.     Volkswagen knew and had a duty to disclose the existence of the Timing Chain System Defect , which made the Subject Vehicles unreliable and dangerous.

143.     The concealment was material because if it had been disclosed, Plaintiffs and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

144.     As a result of Volkswagen's intentional concealment of the Timing Chain Defect, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, costs associated with repairs, and overpayment at the time of purchase or lease and/or the diminished value of the Subject Vehicles.

145.     Volkswagen's conduct was committed knowingly, intentionally, maliciously, and in reckless disregard of the rights of Plaintiffs and the other Class members, with knowledge that injury would result. Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

## COUNT III

### Unjust Enrichment Brought on Behalf of all Class Members

146.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

147.     Plaintiffs bring this Count on behalf of the Nationwide Class and, in the alternative, on behalf of each of the State Classes against all Defendants.

148.     Defendants have benefitted from selling the Class Vehicles which either should not have been sold at all, or should have been sold for a lesser price, given that the value of the Class Vehicles was artificially inflated by Volkswagen's material omissions as previously detailed herein.

149.     Plaintiffs and Class Members conferred this benefit upon the Defendants, which the Defendants knowingly accepted under circumstances that are unjust. Defendants have received and retained these unjust benefits from the Plaintiffs and Class members, and inequity has resulted.

150.     It is inequitable and unconscionable for Defendants to retain these benefits.

151.     Because Volkswagen concealed its fraud and deception, Plaintiffs and Class members were not aware of the true facts concerning the Class Vehicles.

152.     As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and Class members, in an amount to be proven at trial.

## STATE LAW CLAIMS

## MICHIGAN

## COUNT IV

### Violations of Michigan Consumer Protection Act
**(MCL §445.901, *et seq.*)**

153.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

154.     Plaintiff Kin Moy brings this action on behalf of himself and the Michigan Class against all Defendants.

155.     Plaintiff Moy and the Michigan Class members and Defendants are persons within the meaning of §455.902.

156.     Volkswagen is engaged in "trade or commerce" within the meaning of §455.902.

157.     The Michigan Consumer Protection Act ("Michigan CPA") makes unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce…" which includes "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." §455.902(1)(s).

158.     In the course of Volkswagen's business, Volkswagen intentionally or negligently concealed and suppressed material facts concerning the concerning the Class Vehicles. Defendants accomplished this by concealing and failing to disclose the existence of the latent Timing Chain System Defect.

159.     Volkswagen thus violated the provisions of the Michigan CPA, at a minimum by: (a) failing to disclose the latent Timing Chain System Defect, which failure to disclose had

the tendency to mislead persons about the quality of the goods being purchased; and (b) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, or warranty exclusions of the Class Vehicles.

160.     Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

161.     Volkswagen intentionally and knowingly failed to disclose material facts regarding the Class Vehicles with intent to mislead Plaintiff Moy and the Michigan Class.

162.     Volkswagen knew or should have known that its conduct violated the Michigan CPA.

163.     Volkswagen owed Plaintiff Moy as well as the other members of the Michigan Class a duty to disclose the presence of the latent Timing Chain System Defect in the Class Vehicles.

164.     Volkswagen's deceptive concealment of the true characteristics of the Class Vehicles were material to Plaintiff Moy and the Michigan Class.

165.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Moy and the Michigan Class, about the true value of the Class Vehicles.

166.     Plaintiff Moy and the Michigan Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiff Moy and the Michigan Class members who purchased the Class Vehicles would not have purchased them at all if the Class Vehicles' true nature had been disclosed. Plaintiff Moy and the Michigan Class also suffered diminished value of their vehicles, as well as lost or diminished use.

167.     Defendants had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the Michigan CPA in the course of Defendants' business.

168.     Defendants' violations present a continuing risk to Plaintiff Moy and the Michigan Class and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. To give just one example of this continuing risk, Volkswagen has yet to recall all of the dangerous Class Vehicles and has failed to even acknowledge the great danger to Michigan motorists, including Plaintiff Moy and the Michigan Class, that has been and is continuing to be created by the Class Vehicles being driven on the road given that such vehicles have a latent defect that can cause catastrophic engine failure while the vehicle is being operated on public roads and highways.

169.     As a result of the foregoing wrongful conduct of Defendants, Plaintiff Moy and the Michigan Class have been damaged in an amount to be proven at trial. Pursuant to MCL 445.911(1), Plaintiff Moy and the Michigan Class seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, damages, attorneys' fees, costs, and any other just and proper relief available under the Michigan CPA.

## NEW JERSEY

## COUNT V

### Violations of New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)

170.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

171.     Plaintiff Connelly brings this action on behalf of himself and the New Jersey Class against all Defendants.

172.     Plaintiff Connelly and the New Jersey Class members and Defendants are

persons within the meaning of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

173.     Volkswagen engaged in "sales" of "merchandise" within the meaning of N.J. Stat.  §56:8-1(c), (e). Volkswagen's actions as set forth herein occurred in the conduct of trade or commerce.

174.     The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. § 56:8-2.

175.     In the course of Volkswagen's business, Volkswagen intentionally or negligently concealed and suppressed material facts concerning the concerning the Class Vehicles. Defendants accomplished this by failing to disclose the latent Timing Chain System Defect and by refusing to repair the Timing Chain System Defect in accordance with the applicable warranties.

176.     Volkswagen thus violated the provisions of the New Jersey CFA, at a minimum by: (a) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (c) failing to disclose information concerning the Class Vehicles with the intent to induce consumers to purchase the Class Vehicles; and (d) otherwise engaging in conduct likely to deceive.

177.     Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

178.     Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Brian Connelly and the New Jersey Class.

179.     Volkswagen knew or should have known that its conduct violated the New Jersey CFA.

180.     Volkswagen owed Plaintiff Connelly as well as the other members of the New Jersey Class a duty to disclose the standard, quality, and grade of the Class Vehicles given that Volkswagen possessed exclusive and superior knowledge that the Class Vehicles contain the latent Timing Chain System defect.

181.     Volkswagen's fraudulent acts, misleading statements, and deceptive concealment of the true characteristics of the Class Vehicles are material to Plaintiff Brian Connelly and to the New Jersey Class.

182.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Brian Connelly and the New Jersey Class, about the quality of the Class Vehicles, the safety of the Class Vehicles, and the true value of the Class Vehicles.

183.     Plaintiff Brian Connelly and the New Jersey Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff Brian Connelly and the New Jersey Class members who purchased the Class Vehicles would not have purchased them at all if the Class Vehicles' true nature had been disclosed. Plaintiff Brian Connelly and the New

Jersey Class also suffered diminished value of their vehicles, as well as lost or diminished use.

184.    Defendants had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the New Jersey CFA in the course of Defendants' business.

185.    Defendants' violations present a continuing risk to Plaintiff Brian Connelly as well as to the New Jersey Class and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. To give just one example of this continuing risk, Volkswagen has yet to recall all of the dangerous Class Vehicles and has failed to even acknowledge the great danger to New Jersey motorists, including Plaintiff Brian Connelly and the New Jersey Class, that has been and is continuing to be created by the Class Vehicles being driven on the road given that such vehicles' engines can suddenly fail rendering the power steering and power breaking inoperable.

186.    As a result of the foregoing wrongful conduct of Defendants, Plaintiff Brian Connelly and the New Jersey Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

## COUNT VI

**Breach of the Implied Warranty of Merchantability**
**(N.J. Stat. Ann. § 12A:2-314)**

187.    Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

188.    Plaintiff Brian Connelly brings this action on behalf of himself and the New Jersey Class against all Defendants.

189.    The Defendants are and were at all relevant times "merchants" with respect

to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

190.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1).

191.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314.

192.     The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Timing Chain System in the Class Vehicles is inherently defective in that the latent Timing Chain System defect presents a serious safety risk and serious risk of catastrophic failure.

193.     As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff Brian Connelly and the other New Jersey Class members have been damaged in an amount to be proven at trial.

## NEW YORK

## COUNT VII

### Violations of the New York Deceptive Sales Practices Act
### (N.Y. Gen. Bus § 349)

194.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

195.     Plaintiff Sheng Su brings this action on behalf of himself and the New York Class against all Defendants.

196.     The New York's General Business Law § 349 ("NYGBL") makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or . . . in this

state." N.Y. Gen. Bus. L. § 349(a).

197.     In the course of Volkswagen's business, Volkswagen concealed and suppressed material facts concerning the concerning the Class Vehicles. Defendants accomplished this by concealing and failing to disclose the existence of the latent Timing Chain System Defect.

198.     Volkswagen thus violated the provisions of the NYGBL, at a minimum by: (a) failing to disclose the latent Timing Chain System Defect, which failure to disclose had the tendency to mislead persons about the quality of the goods being purchased; and (b) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, or warranty exclusions of the Class Vehicles.

199.     Volkswagen's actions as set forth above occurred in the conduct of business, trade, or commerce.

200.     Volkswagen intentionally and knowingly failed to disclose material facts regarding the Class Vehicles with intent to mislead Plaintiff Su and the New York Class.

201.     Volkswagen knew or should have known that its conduct violated the NYGBL.

202.     Volkswagen owed Plaintiff Su as well as the other members of the New York Class a duty to disclose the presence of the latent Timing Chain System Defect in the Class Vehicles.

203.     Volkswagen's deceptive concealment of the true characteristics of the Class Vehicles were material to Plaintiff Su and the New York Class.

204.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Su and the New York Class, about the true

value of the Class Vehicles.

205.     Plaintiff Su and the New York Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiff Su and the New York Class members who purchased the Class Vehicles would not have purchased them at all if the Class Vehicles' true nature had been disclosed. Plaintiff Su and the New York Class also suffered diminished value of their vehicles, as well as lost or diminished use.

206.     Defendants had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the NYGBL in the course of Defendants' business.

207.     Defendants' violations present a continuing risk to Plaintiff Su and the New York Class and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. To give just one example of this continuing risk, Volkswagen has yet to recall all of the dangerous Class Vehicles and has failed to even acknowledge the great danger to New York motorists, including Plaintiff Su and the New York Class, that has been and is continuing to be created by the Class Vehicles being driven on the road given that such vehicles have a latent defect that can cause catastrophic engine failure while the vehicle is being operated on public roads and highways.

208.     As a result of the foregoing wrongful conduct of Defendants, Plaintiff Su and the New York Class have been damaged in an amount to be proven at trial. Pursuant to the NYGBL, Plaintiff Su and the New York Class seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, damages, attorneys' fees, costs, and any other just and proper relief available under the NYGBL.

## NORTH CAROLINA

## COUNT VIII

### Violations of the North Carolina Consumer Protection Act
### (N.C.G.S. § 75-1.1 *et seq.*)

209.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

210.     Plaintiff Travis Sides brings this action on behalf of himself and the North Carolina Class against all Defendants.

211.     Volkswagen is engaged in "commerce" within the meaning of the North Carolina General Statutes § 75-1.1 ("NCGS").

212.     The NCGS makes unlawful "unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a).

213.     In the course of Volkswagen's business, Volkswagen concealed and suppressed material facts concerning the concerning the Class Vehicles. Defendants accomplished this by concealing and failing to disclose the existence of the latent Timing Chain System Defect.

214.     Volkswagen thus violated the provisions of the NCGS, at a minimum by: (a) failing to disclose the latent Timing Chain System Defect, which failure to disclose had the tendency to mislead persons about the quality of the goods being purchased; and (b) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, or warranty exclusions of the Class Vehicles.

215.     Volkswagen's actions as set forth above occurred in the conduct of commerce.

216.     Volkswagen intentionally and knowingly failed to disclose material facts

regarding the Class Vehicles with intent to mislead Plaintiff Sides and the North Carolina Class.

217.     Volkswagen knew or should have known that its conduct violated the NCGS.

218.     Volkswagen owed Plaintiff Sides as well as the other members of the North Carolina Class a duty to disclose the presence of the latent Timing Chain System Defect in the Class Vehicles.

219.     Volkswagen's deceptive concealment of the true characteristics of the Class Vehicles were material to Plaintiff Sides and the North Carolina Class.

220.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Sides and the North Carolina Class, about the true value of the Class Vehicles.

221.     Plaintiff Sides and the North Carolina Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiff Sides and the North Carolina Class members who purchased the Class Vehicles would not have purchased them at all if the Class Vehicles' true nature had been disclosed. Plaintiff Sides and the North Carolina Class also suffered diminished value of their vehicles, as well as lost or diminished use.

222.     Defendants had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the MMPA in the course of Defendants' business.

223.     Defendants' violations present a continuing risk to Plaintiff Sides and the North Carolina Class and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. To give just one example of this continuing risk, Volkswagen has yet to recall all of the dangerous Class Vehicles and has failed to even acknowledge the great danger to North Carolina motorists, including Plaintiff Sides and the

North Carolina Class, that has been and is continuing to be created by the Class Vehicles being driven on the road given that such vehicles have a latent defect that can cause catastrophic engine failure while the vehicle is being operated on public roads and highways.

224.     As a result of the foregoing wrongful conduct of Defendants, Plaintiff Sides and the North Carolina Class have been damaged in an amount to be proven at trial. Pursuant to the NCGS, Plaintiff Sides and the North Carolina Class seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, damages, attorneys' fees, costs, and any other just and proper relief available under the NCGS.

## OHIO

## COUNT IX

**Violations of Ohio Consumer Sales Practices Act**
**(R.C. § 1345.01 *et seq.*)**

225.     Plaintiffs incorporate by reference, as if fully set forth herein, each allegation set forth in the preceding paragraphs as if fully realleged here.

226.     Plaintiff Joseph Davis brings this action on behalf of himself and the Ohio Class against all Defendants.

227.     Plaintiff Davis and the Ohio Class members are persons for purposes of the Ohio Consumer Sales Practices Act ("OCSPA"). R.C. § 1345.01.

228.     Volkswagen is a supplier for purposes of the OCSPA. R.C. § 1345.01 *et seq*.

229.     Each sale, lease, assignment, or other transfer of the Class Vehicles to Plaintiff Joseph Davis and the Ohio Class members was a consumer transaction for purposes of the OCSPA. R.C. § 1345.01.

230.     The OCSPA makes it unlawful for a supplier to "commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. § 1345.02.

231.     In the course of Volkswagen's business, Volkswagen committed unfair and deceptive acts in connection with consumer transactions by concealing and suppressing material facts concerning the concerning the Class Vehicles. Defendants accomplished this by concealing and failing to disclose the existence of the latent Timing Chain System Defect.

232.     Volkswagen thus violated the provisions of the OCSPA, at a minimum by: (a) failing to disclose the latent Timing Chain System Defect, which failure to disclose had the tendency to mislead persons about the quality of the goods being purchased; and (b) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, or warranty exclusions of the Class Vehicles.

233.     Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

234.     Volkswagen intentionally and knowingly failed to disclose material facts regarding the Class Vehicles with intent to mislead Plaintiff Davis and the Ohio Class members.

235.     Volkswagen knew or should have known that its conduct violated the OCSPA.

236.     Volkswagen owed Plaintiff Davis and the Ohio Class as well as the other members of the Ohio Class a duty to disclose the presence of the latent Timing Chain System Defect in the Class Vehicles.

237.     Volkswagen's deceptive concealment of the true characteristics of the Class Vehicles were material to Plaintiff Davis and the Ohio Class.

238.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Davis and the Ohio Class, about the true value of the Class Vehicles.

239.    Plaintiff Davis and the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiff Davis and the Ohio Class members who purchased the Class Vehicles would not have purchased them at all if the Class Vehicles' true nature had been disclosed. Plaintiff Davis and the Ohio Class also suffered diminished value of their vehicles, as well as lost or diminished use.

240.    Defendants had an ongoing duty to all Volkswagen customers to refrain from unfair and deceptive practices under the OCSPA in the course of Defendants' business.

241.    Defendants' violations present a continuing risk to Plaintiff Davis and the Ohio Class and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. To give just one example of this continuing risk, Volkswagen has yet to recall all of the dangerous Class Vehicles and has failed to even acknowledge the great danger to Ohio motorists, including Plaintiff Davis and the Ohio Class, that has been and is continuing to be created by the Class Vehicles being driven on the road given that such vehicles have a latent defect that can cause catastrophic engine failure while the vehicle is being operated on public roads and highways.

242.    As a result of the foregoing wrongful conduct of Defendants, Plaintiff Davis and the Ohio Class have been damaged in an amount to be proven at trial. Pursuant to the R.C. 1345.09(D), Plaintiff Davis and the Ohio Class seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, damages, attorneys' fees, costs, and any other just and proper relief available under the OCSPA.

**VIRGINIA**

**COUNT X**

**Violations Of The Virginia Consumer Protection Act**
**(Va. Code Ann. §§ 59.1-196, *et seq.*)**

243.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

244.     This claim is brought on behalf of the Virginia Subclass. The Virginia Consumer Protection Act prohibits "...(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; ... (8) advertising goods or services with intent not to sell them as advertised ...; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code § 59.1-200(A).

245.     Defendants are each a "person" as defined by VA. CODE ANN. § 59.1-198. The transactions between Plaintiff and the other Subclass members on the one hand and Volkswagen on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiff and the other Subclass members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

246.     In the course of Volkswagen's business, as described above, Volkswagen sold and leased the Subject Vehicles that suffer from the Timing Chain System defect; marketed the Subject Vehicles as possessing functional and defect free engine systems, when in fact the Subject Vehicles are not. Accordingly, Volkswagen engaged in acts and practices violating Virginia Code section 59.1-200(A), including representing that Subject Vehicles have

characteristics, uses, benefits, and qualities which they do not have; representing that the Subject Vehicles are of a particular standard and quality when they are not; advertising the Subject Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

247.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

248.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Subclass members.

249.    Plaintiff and the other Subclass members were injured as a result of Volkswagen's conduct in that Plaintiff and the other Subclass members overpaid for their Subject Vehicles and did not receive the benefit of their bargain, and their Subject Vehicles have suffered a diminution in value, or Plaintiffs previously repaired their Subject Vehicles at their own expense. These injures are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

250.    Volkswagen concealed and/or suppressed the material facts regarding the Timing Chain System defect, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Subclass members and to induce Plaintiff and the other Subclass members to purchase or lease the Subject Vehicles at a higher price, which did not match the Subject Vehicle's true value. Plaintiff and the other Subclass members therefore seek treble damages.

**ALL OTHER STATES AND THE DISTRICT OF COLUMBIA**

**COUNT XI**

**Violations Of The Unfair And Deceptive Trade Practices Acts
Of 34 States And The District Of Columbia**

146.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

147.    Plaintiff brings this Count on behalf of the subclasses associated with the states identified below in the next paragraph immediately *infra*.

148.    Volkswagen's conduct described herein constitutes prohibited practices, unfair, deceptive and unconscionable conduct under the unfair and deceptive trade practices acts of 34 states and the District of Columbia, as follows:

    a.   Alaska: The aforementioned practices by Volkswagen were and are in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq*.;

    b.   Arkansas: The aforementioned practices by Volkswagen were and are in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq*.;

    c.   California: The aforementioned practices by Volkswagen were and are in violation of the California Unfair and Deceptive Practices Act, Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.   Colorado: The aforementioned practices by Volkswagen were and are in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.;

e.   Connecticut: The aforementioned practices by Volkswagen were and are in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.   Delaware: The aforementioned practices by Volkswagen were and are in violation of the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.   District of Columbia: The aforementioned practices by Volkswagen were and are in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*;

h.   Florida: The aforementioned practices by Volkswagen were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.   Georgia: The aforementioned practices by Volkswagen were and are in violation of the Georgia Fair Business Practices Act, §10-1-390 *et seq.*;

j.   Hawaii: The aforementioned practices by Volkswagen were and are in violation of Hawaii's Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

k.   Idaho: The aforementioned practices by Volkswagen were and are in violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

l.   Illinois: The aforementioned practices by Volkswagen were and are in violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 ILCS § 505/1, *et seq.*;

m. Kansas: The aforementioned practices by Volkswagen were and are in violation of the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-626, *et seq*.;

n. Kentucky: The aforementioned practices by Volkswagen were and are in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;

o. Louisiana: The aforementioned practices by Volkswagen were and are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

p. Maine: The aforementioned practices by Volkswagen were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

q. Maryland: The aforementioned practices by Volkswagen were and are in violation of the Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

r. Massachusetts: The aforementioned practices by Volkswagen were and are in violation of the Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq*;

s. Minnesota: The aforementioned practices by Volkswagen were and are in violation of the Minnesota Prevention of Consumer Fraud Act, Minn.

Stat §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

t. Mississippi: The aforementioned practices by Volkswagen were and are in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

u. Missouri: The aforementioned practices by Volkswagen were and are in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

v. Montana: The aforementioned practices by Volkswagen were and are in violation of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq*.;

w. Nebraska: The aforementioned practices by Volkswagen were and are in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq*., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq*.;

x. Nevada: The aforementioned practices by Volkswagen were and are in violation of the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq*.; New Hampshire: The aforementioned practices by Volkswagen were and are in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq*.;

y. New Mexico: The aforementioned practices by Volkswagen were and are in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq*.;

z.   North Dakota: The aforementioned practices by Volkswagen were and are in violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq*.;

aa.  Oklahoma: The aforementioned practices by Volkswagen were and are in violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq*.;

bb.  Oregon: The aforementioned practices by Volkswagen were and are in violation of the Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq*.;

cc.  Rhode Island: The aforementioned practices by Volkswagen were and are in violation of the Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq*.;

dd.  South Carolina: The aforementioned practices by Volkswagen were and are in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq*.;

ee.  South Dakota: The aforementioned practices by Volkswagen were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq*.;

ff.  Vermont: The aforementioned practices by Volkswagen were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq*.;

gg.  Washington: The aforementioned practices by Volkswagen were and are in violation of the Washington Consumer Fraud Act, Wash. Rev. Code §

19.86.010, *et seq.*;

hh. West Virginia: The aforementioned practices by Volkswagen were and are in violation of the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A6-101, *et seq.*;

ii. Wisconsin: The aforementioned practices by Volkswagen were and are in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq*.

251.    Under statutes enacted in these 34 states and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Subclass members are consumers who purchased Volkswagen's defective Affected Vehicles pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

252.    Under statues enacted in these 34 states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Volkswagen is a supplier, manufactures, advertisers, and sellers who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

253.    Volkswagen violated the statutes enacted in these 34 states and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Timing Chain System in the Subject Vehicles would last beyond the warranty periods, would not require maintenance during the useful life of the engine, and were not subject to scheduled maintenance, and by other acts alleged herein. These representations were made through non-

disclosures in the maintenance schedules provided with the Subject Vehicles.[13]

254.     Volkswagen violated the statutes enacted in these 34 states and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by willfully failing to disclose and actively concealing that the Timing Chain System in the Subject Vehicles is defective, as described above.

255.     The actions of the Volkswagen alleged herein are uncured or incurable deceptive acts under the statutes enacted in these 34 states and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

256.     Volkswagen had actual knowledge of the defective condition of the Timing Chain System in the Subject Vehicles, and failed to take any action to cure such defective condition or to adequately inform Plaintiff or the Class of material information regarding the performance of the Timing Chain System in the Subject Vehicles, well in excess of thirty (30) days before the Plaintiff or any Class member did or could have possessed any such knowledge.

257.     As a direct result of the Volkswagen's violations of the statutes enacted in these 34 states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff and members of the Class have been damaged.

258.     Plaintiff and members of the Class are therefore entitled to and hereby seek compensatory damages, multiple damages, and equitable and declaratory relief and any and all other available remedies according to proof.

---

[13] *See* Exhibit A.

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court grant the following relief:

A.    Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, recovery of costs of repairs made as a result of the latent Timing Chain System Defect, or the overpayment or diminution in value of their Affected Vehicles;

E.    Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

F.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

G.    An award of costs and attorneys' fees; and

H.    Such other or further relief as may be appropriate.

BRIAN CONNELLY, JOSEF DAVIS, HANS EUBANKS, EVGENY FEDOROV, KIN MOY, MICHAEL PARKER, RICHARD REHAK, TRAVIS SIDES, SHENG SU, AND ZOLA THORNTON, on behalf of themselves and all others similarly situated.
BY COUNSEL

WEBSTER BOOK LLP


By: */s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
swebster@websterbook.com
Aaron S. Book (VSB No. 43868)
abook@websterbook.com
Webster Book LLP
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (phone and fax)

Kevin R.  Dean (Application for admission
*Pro Hac Vice* to be submitted upon filing)
John D. O'Neill (Application for admission
*Pro Hac Vice* to be submitted upon filing)
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Telephone: 843.216.9000
E-mail: kdean@motleyrice.com
E-mail: jdoneill@motleyrice.com

*Attorneys for Plaintiff and the Proposed Classes*